**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **PAMELA TOBIN** | ) |
| C/O Goodwin Weber PLLC | ) |
| 267 Kentlands Blvd., Suite 250 | ) JURY TRIAL DEMANDED ON ALL ISSUES |
| Gaithersburg, MD 20878 | ) |
| | ) |
|     Plaintiff | ) |
| | )     Civil Action No: |
|     v. | ) |
| | ) |
| **NORMAN C. BAY, CHAIRMAN,** | ) |
| **FEDERAL ENERGY REGULATORY COMMISSION** | |
| | ) |
| SERVE: | ) |
| (1) Norman C. Bay, Chairman | ) |
| Federal Energy Regulatory Commission | ) |
| 888 First Street, NE | ) |
| Washington, DC 20426 | ) |
| & | ) |
| (2) United States Attorney for the District of Columbia | |
| Victor H. Cohen, Jr. Office of U.S. Attorney | ) |
| United States Attorney's Office | ) |
| 555 4th Street, NW | ) |
| Washington, DC 20530 | ) |
| & | ) |
| (3) Loretta E. Lynch, Attorney General of the United States | |
| U.S. Department of Justice | ) |
| 950 Pennsylvania Avenue, NW | ) |
| Washington, DC 20530-0001 | ) |
| | ) |
| And | ) |
| | ) |
| **EDUARDO RIBAS** | ) |
| c/o    FERC | ) |
|       888 First Street, NE | ) |
|       Washington, DC 20426 | ) |
| | ) |
| And | ) |
| | ) |
| **TOD M. HENBY** | ) |
| c/o    FERC | ) |
|       888 First Street, NE | ) |
|       Washington, DC 20426 | ) |
| | ) |
|     Defendants | ) |

## COMPLAINT

1.      This is a suit brought by Plaintiff, PAMELA TOBIN ("Ms. Tobin") for and by counsel for Plaintiff, Goodwin Weber PLLC, attorneys at law, against Norman C. Bay, Chairman, Federal Energy Regulatory Commission ("FERC"), and alleges discrimination based upon the following:

a.      **Age** in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*;

b.      **Gender** in violation of Title VII of the Civil Rights Act of 1964, 42 USC § 2000 *et seq.*;

c.      **Retaliation** for protected activity under the aforementioned statutes.

d.      **Violation of Veterans Preference** under the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301, *et seq,* the Veterans Employment Opportunities Act, 5 USC § 2302, *et seq*.

e.      Violation of the **Privacy Act,** 5 U.S.C. § 552a

f.      Reprisal in violation of the **No Fear Act,** and the **Pilot Program for Enhancement of Contractor Protection from Reprisal of Certain Information**, 47 U.S.C. § 4712**.**

g.      **Sexual Preference** in violation of the DC Human Rights Act.

2.      This Court has jurisdiction under the ADEA, 29 U.S.C. § 621 *et seq.*  Jurisdiction is specifically conferred on the Court by 42 U.S.C. § 2000e, 28 U.S.C. § 1343, 28 USC § 1391 and 5 USC § 552a.  Equitable and other relief are also sought under 42 U.S.C. § 2000e-5(g).

3.      Venue is proper in the district court pursuant to 28 U.S.C. §1391(e)1 as well as 42 U.S.C. § 2000e-5(f)(3) in that the events giving rise to Plaintiff's cause of action substantially all occurred in the District of Columbia.

4.      Ms. Tobin has exhausted all of her administrative remedies as outlined below:

a.      On or about September 2, 2014, Ms. Tobin filed a Formal Complaint with the FERC EEO Office.   In that Complaint, Ms. Tobin alleged that she was the victim of discrimination based upon her age and sex based on her non-selection for an open position as an Energy Industry Analyst in the Office of Electric Reliability. On April 24, 2015, the Agency issued its Final Agency Decision denying Ms. Tobin's claims.

b. On or about March 9, 2015, Ms. Tobin filed a Formal Complaint with the FERC EEO Office.  This Complaint alleges, *inter alia*, that Ms. Tobin was the victim of reprisal when Tod Henby counseled her and criticized her without basis; made it difficult for her to perform her job duties; and has taken steps to have Ms. Tobin removed from the security contract at FERC.  On June 30, 2015, the Agency dismissed the claim, and advised that a Complaint may be filed with this Court on the allegations of reprisal.

## PARTIES

5.      Plaintiff, Pamela Tobin, is a United States Citizen and a resident of the State of Maryland. Plaintiff is a 57 year-old female.  At all times relevant hereto, Ms. Tobin has been employed as a security specialist for SECTEK, Inc. ("SECTEK"), a security contractor for FERC.

6.      Defendant Norman C. Bay is the Chairman for FERC.  FERC is an independent agency of the government of the United States of America, housed within the Department of Energy and is tasked with regulating the interstate energy industry (electricity, natural gas, and

oil, natural gas pipelines and hydropower projects).  Defendant Norman C. Bay is being sued in his official capacity as Chairman of FERC.

7.      Defendant Tod M. Henby (Male, 53 years-old) is the Director of Security and Safety for FERC.  Defendant Tod Henby is being sued in both his official capacity and in his personal capacity.

8.      At all times relevant hereto, Eduardo Ribas (Male, 48 years-old) has been the Chief Human Capital Officer for FERC.  Defendant Ribas is being sued in his official capacity.

## FACTS

9.      Ms. Tobin has an extensive employment background in law enforcement.   Since July 2010, Ms. Tobin has been employed as a security specialist for contractors at FERC (from 2010 to 2013, Plaintiff worked for Omniplex, and from 2013 to present Plaintiff has worked for SECTEK, Inc.).   SECTEK, Inc. is the current physical and personnel security contractor for FERC.  In addition to providing personnel security (in conducting background checks and badging for persons entering FERC's facility), Ms. Tobin has been responsible for, *inter alia*, drafting security policy and administering aspects of logical access to FERC's security-related computer systems.  Ms. Tobin previously was the security supervisor for the Denver (Colorado) Public Library System.  Plaintiff also worked as a sworn law enforcement officer, and in total, has over 37 years of experience in the security and law enforcement field.  She is an honorably discharged veteran of the United States Air Force.

10.     In her position as a security specialist, Ms. Tobin has been responsible for (among other things) onboarding for new hires and has been responsible for the credentialing program under HSPD-12.

11.     That in July 2012, Ms. Tobin applied for an open security specialist position with FERC.  Plaintiff was fully qualified for this open position. Mr. Henby hired Cory Gallivan (male, age - 40's) rather than Plaintiff, and no interviews were conducted for this position.  Mr. Henby led Ms. Tobin to believe that he would take steps to convert her current security position to a federal position, and directed Ms. Tobin to provide information and documentation to allow this to occur.  Notwithstanding theses promises, Mr. Henby and the Agency never converted Tobin's position to a federal position.

12.     That in January 2013, the Agency again posted an opening for the same security specialist position (Cory Gallivan had left the position).  Ms. Tobin applied for the position and was fully qualified.  Ms. Tobin interviewed with Gerald McAteer, Deputy Security Chief and with the HR Supervisor, but again was not selected.  Rather, the Agency hired Jeremy Parmer (male, age – 20's).

## FAILURE TO HIRE

13.     On May 22, 2014, Ms. Tobin applied for an open position of Energy Industry Analyst.   The posting for the position provided as follows:

> FOR GS-12
> You must have one year specialized experience equivalent in responsibility and scope to the GS-11 level.  Required specialized experience is defined as experience in reviewing and analyzing complex policy issues associated with filings and rulemakings for the purpose of identifying emerging issues, the implication of regulatory policies for new technologies and potential changes to policies as it pertains to bulk electric system reliability and/or security (physical and/or cyber).
>
> FOR GS-13
> You must have one year of specialized experience equivalent in responsibility and scope to the GS-12 level.  Required specialized experience is defined as experience that demonstrates comprehensive knowledge of complex regulatory and operational issues associated with bulk electric system reliability and/or security (physical and/or cyber), such as identifying emerging issues, analyzing data, recommending or addressing proposed policy and operational changes.

5

14.     Plaintiff was fully qualified for the Energy Industry Analyst position in light of the following: Plaintiff has over 37 years of security and law enforcement experience, and approximately 14 years of experience at the administrative and management level.  Plaintiff has been involved in collecting and analyzing data as well as formulating security policy.  Plaintiff previously worked for the Regional Transportation District in Colorado and worked in security operations and policy after September 2001.  In addition, Plaintiff helped to develop policy and procedure for the State of Nebraska Department of Corrections and for the Denver Public Library System. Moreover, as alleged above, Plaintiff has specific experience in drafting security policy and administering aspects of logical access to FERC's cyber security-related computer systems.

15.     After Plaintiff applied for the position, the USA Job.com website indicated that Plaintiff was "not referred" for the Energy Industry Analyst position.  The Agency did not interview Plaintiff for the Energy Industry Analyst position.

16.     The Agency hired Matthew Nutter (male, age 26) for the Energy Industry Analyst position.  Nutter had less qualifications and experience than Plaintiff.  In addition, Nutter was ultimately selected after Plaintiff made her initial complaints.  The FERC decisions makers made their decision to select Nutter with full knowledge of Plaintiff's complaints.  In that regard, the FERC decision makers (including Mr. Porter and Mr. Ribas selected Nutter with the specific intention of concocting a pretextual reason for not hiring Ms. Tobin).

17.     FERC's HR Specialist, Patricia Macey, supervised by Defendant Ribas, initially explained that the Agency did not hire Ms. Tobin for the open position because she was qualified, but not the most qualified.  This explanation was false insofar as Plaintiff was extremely well qualified for the position as stated in the job announcement.   When pressed, Ms.

Macey then changed her explanation to say that Ms. Tobin was not qualified for the EIA position because she did not have "specialized experience" in the field of electric system reliability. This alternative explanation is likewise not worthy of belief, because the job announcement expressly defines specialized experience as 'bulk electric reliability **and/or** security (physical and/or cyber)."   Other FERC Human Resources personnel and/or officials within the hiring Division of FERC have noted that Plaintiff does have the requisite job experience denoted in the announcement.    The Agency's changing explanations and unsupported reading of the job announcement demonstrates that the explanation for not hiring Plaintiff is a pretext for discrimination.  In addition, the Agency's failure to select Plaintiff on two (2) prior occasions demonstrates a pattern of discrimination.

## HOSTILE WORK ENVIRONMENT

18.     That on or about October 9, 2012, Henby used his government email account to forward graphic pornographic pictures to Cory Gallivan and other FERC personnel.   Mr. Gallivan shared this information with Ms. Tobin, who recommended that Mr. Gallivan report this issue to Naeem Musa, the official in charge of Information Technology Security at FERC.

19.     Ms. Tobin was exposed to the pornographic images due to the conduct of Mr. Henby.  Plaintiff was seriously offended and disturbed by exposure to these images, and the pornography in the workplace (sent by somebody in authority) created hostile and negative feelings.  The viewing, use or dissemination of pornography within the FERC workplace is explicitly prohibited by FERC policies and procedures.

(a) Despite specific prohibitions on pornography in the workplace, FERC took no actions to discipline Henby after he disseminated pornography in the FERC workplace.

20.     On several occasions, Mr. Henby and Mr. McAteer would make inappropriate

(sexual) remarks about female employees.  These remarks would occur in the presence of Pam Tobin, or other female employees.

21.     Mr. Henby retaliated against Mr. Gallivan for reporting his misconduct to Naeem Musa.  Mr. Henby confronted Mr. Gallivan, and thereafter made ongoing snide and condescending remarks and otherwise harassed Mr. Gallivan.  In addition, Mr. Henby made it known that he would get Mr. Gallivan (by forcing him to either leave or be terminated).  Mr. Henby's conduct created an atmosphere where it was clear that Mr. Henby would retaliate against employees for speaking up.

22.     That in July 2014 Plaintiff filed an _informal_ EEO Complaint as a result of her non-selection for the Energy Industry Analyst position. At that time, Tobin disclosed, _inter alia_, that Mr. McAteer was operating his private security business out of his government office with the knowledge of Tod Henby (i.e. McAteer is Henby's direct report).  In addition, Tobin reported the defrauding of payroll; i.e. while on the clock they were actually on several golf outings and/or doing non-FERC work for Mr. McAteer.

23.     The EEO Office instructed Tobin that she was not to complain about these things in her formal EEO Complaint.  Specifically, Defendant Executive Director Anton Porter, the head of the FERC Office of the Executive Director, and his employees, EEO Manager Madeline Lewis and EEO Specialist Kadia Givner, instructed Ms. Tobin not to report misconduct in her EEO complaint forms.  This misconduct included the fact that Gerald McAteer used Amanda Poole (a contractor) as his personal secretary to run his business on FERC time.   However, because of the nature of the misconduct, Tobin insisted that she insert these allegations in her formal EEO Complaint.  However, instead of immediately taking action to remedy these issues, the Defendants retaliated against Plaintiff.

24.     That instead of facilitating a resolution of Tobin's EEO Complaint, Anton Porter allowed Eduardo Ribas to preside over a meeting (information conference) which was a conflict of interest given that he was a responding official in the EEO Complaint.  The actions of Anton Porter served to aggravate the discrimination and retaliation issues.

25.     That Henby and Ribas learned of Tobin's allegations (including both the Title VII allegations and the allegations of government fraud, waste and abuse) through the EEO Complaint process.

26.     Defendant FERC (through its agent, servant and/or employee, Tod Henby), made false and defamatory statements about Plaintiff in violation of the Privacy Act.   This false statement occurred in a meeting presided over by Eduard Ribas and attended by EEO Specialist Kadia Givner.

27.     Defendant FERC has failed to fully and completely investigate the malicious and defamatory statements against Plaintiff.

28**.**     On August 27, 2014, Ms. Tobin filed her formal discrimination complaint for the failure to hire her for the EIA position.  Thereafter, the Agency conducted an investigation.  Mr. Henby and Mr. Ribas (among others) were interviewed for the EEO investigation.

29.     On February 25, 2015, Plaintiff elected to have the Agency issue a Final Agency Decision on her Complaint (thus affording the Agency the opportunity to correct its illegal actions before filing suit and reporting the misconduct to outside sources).

30.     Being fully aware of the pending EEO Complaints, FERC has engaged in pattern and practice of harassment based on Plaintiff's protected activity as detailed above and below.

31.      FERC Officials made changes to the chain of command.  Specifically, in August 2014, FERC directed that all SECTEK employees should utilize the proper chain of command.

Thereafter the Agency's POC (Jeremy Parmer) and the SECTEK manager held a one-on-one meeting with Ms. Tobin to discuss the chain of command.   Ms. Tobin was the only SECTEK employee who was required to undergo a one-on-one meeting to review the chain of command.

32.     From August 2014 to the present, Mr. Henby has scrutinized and bird-dogged Plaintiff, by (among other things) pouring over her emails, phone records, and computer.

33.     The Agency has ignored Plaintiff's repeated request for assistance while working at the IT security/cyber logical access launch, which has an extremely heavy workload.  The Agency moved the other responsible SECTEK employee for this program (Amanda Poole) to another location in the building, thus undermining her request for help.

34.     Since October 2014, Mr. Henby and/or Mr. Ribas confiscated the 'master key' from Plaintiff.  This master key is utilized to gain access to the building, file rooms, etc.  Other SECTEK employees who have not filed an EEO Complaint (e.g. Amanda Poole) have not had their master key confiscated.

35.     In October 2014, Plaintiff was forced to move the FERC badging office in one day.  The Plaintiff was personally directed to move all computer work stations, personnel records, badging supplies, desks, credenzas, etc.  The reason for this request was because "Tod Henby had said so" although there was not a legitimate business or security reason to move the office in one (1) day as was requested.

36.     In October 2014, approximately, Mr. Henby criticized Ms. Tobin for being away from the office (in the rest room) and not putting a notice on the door.  This is not a standard practice for any employee.

37.     In December 2014, Tod Henby changed Plaintiff's work schedule.  Specifically, he directed that the work hours of the badging office be changed to 8:00 am to 5:00 pm (the start

time had previously been 7:00 a.m. to accommodate individuals who arrive at the FERC facility

for temporary badges).  This change was done to target Plaintiff (who had previously requested

the opportunity to work early hours and mitigate traffic commuting concerns) and was without

any legitimate business or security reason.

38.     In December 2014, Tod Henby instructed Plaintiff to report to work at the

regularly scheduled time on days when there was a delayed opening and/or inclement weather.

Prior to her EEO Complaint, Mr. Henby had permitted Plaintiff to previously follow the federal

government leave procedures for delayed openings/inclement weather.

39.     In February 2015, Mr. Henby arranged for a meeting with SECTEK officers.  Mr.

Henby had threatened the project supervisor saying that SECTEK would be removed from the

FERC security contract unless SECTEK or the project manager removed Ms. Tobin from the

FERC contact (which SECTEK and its project manager has refused to do, as there was no lawful

or appropriate basis to do so).

40.     In February 2015, Tod Henby directed the SECTEK project manager to remove

Plaintiff from attending the Black History Month Program.

41.     Since the filing of her Complaint, Mr. Henby has been involved in an effort to

find any type of wrongdoing on the part of Plaintiff (no matter how trivial) to that she could be

suspended or terminated.

42.     In February 2015, Tod Henby admonished SECTEK to reprimand Ms. Tobin for

allegedly failing to follow proper procedures in notifying Mr. Henby that an employee had failed

to return his badge.  Ms. Tobin had already addressed (or was taking steps to address) issues with

the former employee and the failure to return to the security badge (for example, deactivating the

badge and speaking to the HR Department).   Ms. Tobin had followed the appropriate protocol and there was no basis to admonish or reprimand Ms. Tobin.

43.     In February 2015, Mr. Henby advised SECTEK that he would have the company removed from the FERC contract unless steps were taken to remove Ms. Tobin from the FERC premises.

44.     Since at least March 2015, Mr. Henby has circumvented security policy and procedure, and has assigned duties directly to Ms. Tobin's co-worker, Amanda Poole (even though she does not have the same knowledge, training or experience as Ms. Tobin) thus circumventing the SECTEK project manager's authority to assign work assignments to employees, all in violation of federal contracting procedures.

45.     In June 2015, in an attempt to protect Plaintiff from further hostile work environment, reprisal, and discrimination, SECTEK proposed to move Plaintiff to a different federal contract at a different federal agency, with no loss of pay, benefits or working conditions. Inexplicably, Defendant Henby then declined to allow SECTEK to transfer Plaintiff off the FERC contract to another assignment.  Defendant Henby refused Plaintiff's transfer by refusing to approve SECTEK's proposed replacement for Plaintiff. Since Henby's June 2015 wrongful actions in preventing Plaintiff's transfer to a different, non-hostile, workplace, Defendant FERC, through counsel, has been informed of Henby's wrongful actions.  No steps were taken by FERC to allow Plaintiff's transfer, thereby allowing Plaintiff's wrongful discrimination, reprisal, and hostile work environment to continue unabated.

## FALSE STATEMENTS ABOUT PLAINTIFF

46.     In March 2015 during an EEO interview, Tod Henby made a statement accusing Plaintiff of official misconduct.  Official records of FERC contain the following statement:

"Apparently an employee who had left the Commission's employ was rehired. Information was leaked about the rehiring, the salary of the hire, and other protected information. Employees of both the Commission and SECTECK were questioned without the identity of the source of the leak ever being determined.  Mr. Henby believed that Pam Tobin was the source of the leak."

47.     This statement is absolutely false with no evidence to support it.

## CLAIMS FOR RELIEF

### COUNT I
### Discrimination and Retaliation Based Upon Age under the ADEA against FERC

48.     Plaintiff incorporates paragraphs 1 through 47 by reference as if fully set forth herein.

49.     This cause of action arises under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*

50.     Plaintiff is 57 years old.

51.     Plaintiff was subjected to disparate treatment as it relates to Defendant FERC's refusal to hire her for the position of Energy Industry Analyst and by hiring a much younger employee with less experience.  This is consistent with FERC's prior pattern of discrimination in not selecting Plaintiff for open positions that she was qualified to fill.

52.     After Plaintiff filed her EEO Complaint herein, she was subjected to ongoing reprisal.

53.     Defendant FERC's illegal discrimination and retaliation has caused Plaintiff to suffer irreparable loss and injury including, but not limited to, economic loss, humiliation, embarrassment, emotional distress (requiring therapy and treatment), physical harm and deprivation of her right to employment opportunities.  In addition, the Defendant FERC's

discriminatory and retaliatory treatment of Plaintiff resulted in loss of pay, retirement benefits, job training, job progression and financial injury.

## COUNT II

### Discrimination and Retaliation Based Upon Title VII (Sex) Against FERC

54.     Plaintiff incorporates paragraphs 1 through 53 by reference as if fully set forth herein.

55.     This cause of action arises under Title VII of the Civil Rights Act of 1964, 42 USC §2000e-16, et seq.

56.     Plaintiff is female.

57.     Plaintiff was subjected to disparate treatment as it relates to the Defendant FERC's refusal to hire her for the position of Energy Industry Analyst and by hiring a male employee with less education and experience.  This is consistent with FERC's prior pattern of discrimination in not selecting Plaintiff for open positions that she was qualified to fill.

58.     Plaintiff was also subjected to a hostile work environment based on her gender, especially because: (a) plaintiff was exposed to pornographic images which were emailed by Mr. Henby; and (b) Mr. Henby and Mr. McAteer would make inappropriate (sexual) remarks about female employees in Plaintiff's presence.

59.     After Plaintiff filed her EEO Complaint herein, she was subjected to ongoing reprisal.

60.     Defendant FERC's illegal discrimination and retaliation has caused Plaintiff to suffer irreparable loss and injury including, but not limited to, economic loss, humiliation, embarrassment, emotional distress (requiring therapy and treatment), physical harm and deprivation of her right to employment opportunities.  In addition, the Defendant FERC's

discriminatory and retaliatory treatment of Plaintiff resulted in loss of pay, retirement benefits, job training, job progression and financial injury.

## COUNT III
### Discrimination and Retaliation Based Upon Veteran Status Under USERRA and the Veterans Employment Opportunities Act Against FERC

61.     Plaintiff incorporates paragraphs 1 through 60 by reference as if fully set forth herein.

62.     Plaintiff is a disabled veteran with at least a 10% disability (ears and neck), and she is eligible for benefits as a disabled veteran.  Plaintiff was honorably discharged from the US Air Force after 3 years and 7 months and she is a person eligible for relief under the USERRA and VEOA.

63.     Under 5 USC § 2302(b)11, an employer may not knowing fail to take, recommend or approve a personnel action if such action would violate a veterans preference.  In addition, under 5 USC § 3112 and 5 CFR § 16.302 Plaintiff is entitled to a non-competitive initial appointment without competition.

64.     As a disabled veteran, Plaintiff is entitled to at least a five-point preference and is otherwise entitled to preferential treatment when seeking federal employment.

65.     Notwithstanding the foregoing, the Defendant FERC ignored Plaintiff's disabled veteran status and failed to hire her for the position of Energy Industry Analyst.  Rather, the Defendant FERC hired persons who do not have any veteran's preference or veteran's status, and/or persons with less training, experience and seniority.

66.     That as a direct result of the foregoing, Plaintiff has suffered irreparable loss and injury including, but not limited to, economic loss, humiliation, embarrassment, emotional distress, physical harm and deprivation of her right to employment opportunities.  In addition,

the Defendant FERC's discriminatory and retaliatory treatment of Plaintiff resulted in loss of

pay, retirement benefits, job training, job progression and financial injury.

## COUNT IV
### Violations of the Privacy Act 5 USC 552a – Failure to Maintain Accurate Records Against FERC

67.     Plaintiff incorporates paragraphs 1 through 66 by reference as if fully set forth

herein.

68.     The Privacy Act requires that federal agencies maintain personnel records and to

make determinations of individuals "with such accuracy, relevance, timeliness, and completeness

as is reasonably necessary to assure fairness to the individual in the determination."

69.     That an individual may bring a claim under the Privacy Act in accordance the

following:

> Whenever any agency . . . fails to maintain any record concerning any individual with
> such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness
> in any determination relating to the qualifications, character, rights, or opportunities of, or
> benefits to the individual that may be made on the basis of such record, and consequently
> a determination is made which is adverse to the individual [the individual may bring a
> civil action against the agency]."  5 U.S.C. § 552a(g)(1)(C).

70.     That on information and belief, Defendant FERC maintains personnel or other

records containing information that Plaintiff was the source of a leak of confidential information

(see paragraph 46 hereinabove).

71.     That the aforementioned records violate the Privacy Act insofar as they are false

and misleading.

72.     As a direct and proximate result of the personnel or other records, Plaintiff has

suffered harm, to wit: she was not hired for a new position at FERC, and she suffered from

mental distress, emotional trauma, embarrassment, humiliation, and loss of financial opportunities.

73.     At all relevant times, Defendant FERC has acted with ill will and actual malice.

74.     All of Plaintiff's injuries, losses and damages, past, present or future, were caused solely by the conduct, actions and inactions of  Defendant FERC, as set forth herein, without any negligence, want of due care, or provocation on the part of Plaintiff, either directly or indirectly.

**COUNT VI**
**Violations of the Privacy Act 5 USC 552a – Failure to Gather Information – Against FERC**

75.     Plaintiff incorporates paragraphs 1 through 74 by reference as if fully set forth herein.

76.     Defendant FERC willfully and intentionally failed to the greatest extent practicable to collect from Plaintiff information that would have refuted the allegations against her.

77.     This failure has had an adverse effect on Plaintiff.

78.     As a result of the Defendant FERC's violations of the Privacy Act, Plaintiff has suffered adverse and harmful effects, including but not limited to, mental distress, emotional trauma, embarrassment, humiliation, and lost or jeopardized present or future financial opportunities.

## COUNT VII
## (First Amendment – *Bivens* Action Against FERC, Henby and Ribas)

79.     Plaintiff incorporates paragraphs 1 through 78 by reference as if fully set forth herein.

80.     Plaintiff has First Amendment protection in which she has spoken on matters of great public concern.

81.     When informing FERC officials of the misconduct of Mr. Henby and others (including the pay-to-play schemes involving the running of a private security and safety business  on FERC systems and during government employment, and providing information on misconduct, including, without limitation, misuse of classified information security resources to other government agencies such as the Office of Inspector General for the Department of Energy and the Federal Investigative Service of the Office of Personnel Management, Plaintiff was not only acting in her position as a personnel security officer, but also in her position as a concerned citizen and taxpayer.

82.     Plaintiff's disclosure of misconduct was highly extraordinary and unique, and was not a usual aspect of Plaintiff's employment.

83.     Plaintiff's speech and her disclosures were a substantial and motivating factor in prompting Defendants FERC, Henby and Ribas to undertake retaliatory actions against Tobin, including: (a) not approving Plaintiff's switching from FERC to another contract; (b) micro-managing Plaintiff in the performance of her duties (viewing her emails, telephone calls); (c) changing Plaintiff's work hours from a 7:00 a.m. start time to an 8:00 a.m. start time) while at the same time not changing the start time of a less-senior security specialist in the same office; (d) taking away Plaintiff's Master key and access to all file rooms even though Plaintiff's duties included accessing files in various rooms; (e) in contravention of the law, managing the

SECTEK, Inc. security specialists in the same office and assigning work to Plaintiff's co-workers.  This was done in to undermine Plaintiff's value on the contract; (f) threatening the SECTEK project manager to remove Plaintiff, or else FERC would not renew or would cancel the SECTEK contract; (g) ordering Plaintiff to move her office (and all computers, computer stations, supplies for credentialing and Personnel Security files) within one (1) calendar day.

84.    Defendants would not have taken these retaliatory actions against her in the absence of protected speech and other illegitimate actions described herein.

85.    In taking the retaliatory actions against Plaintiff, Defendants were acting under color of federal law, custom, usage, and regulation.

## COUNT VIII
### (Defamation Against Henby)

86.    Plaintiff incorporates paragraphs 1 through 85 by reference as if fully set forth herein.

87.    In March 2015, Defendant Henby made false statements about Plaintiff, stating the following to EEO Investigators, to wit:   "Apparently an employee who had left the Commission's employ was rehired.   Information was leaked about the rehiring, the salary of the hire, and other protected information.  Employees of both the Commission and SECTECK were questioned without the identity of the source of the leak ever being determined.  Mr. Henby believed that Pam Tobin was the source of the leak."

88.    The statement was false and defamatory.

89.    Defendant Henby was negligent in publishing said statement.  On information and belief, Henby did not undertake any steps to verify the accuracy of this statement.  Had Henby undertaken steps to ascertain the veracity of this information, he would have learned that this statement is patently false and no documents, witnesses or other evidence supports it.

90.     That as a direct and proximate result of the false statement, Plaintiff has suffered injury, including the loss of reputation at FERC and elsewhere, loss of job opportunities, and she was otherwise damaged.

## COUNT IX
### (Intentional Infliction of Emotional Distress Against Henby)

91.      Plaintiff incorporates paragraphs 1 through 90 by reference as if fully set forth herein.

92.     That Defendant Henby engaged in extreme and outrageous conduct, including but not limited to: (a) lying to Plaintiff about creating a federal position for her; (b) refusing to hire Plaintiff for open job positions; (c) making false statements about Plaintiff; (d) harassing Plaintiff in her day-to-day job duties; (e) retaliating against Plaintiff for availing herself of her rights under Title VII, the Privacy Act, the ADEA, and other whistleblower protection laws; (f) disseminating pornography in the workplace; and (g) the Defendant otherwise engaged in extreme and outrageous actions.

93.     That Defendant's conduct was intentional and/or reckless.

94.     That as a direct and proximate result of the foregoing, the Plaintiff suffered severe emotional distress, embarassment, and humiliation.

## COUNT X
### (DC Human Rights Act against FERC)

95.     Plaintiff incorporates paragraphs 1 through 94 by reference as if fully set forth herein.

96.     This cause of action arises under the DC Human Rights Act, § 2–1401.01 *et seq.*

97.     Plaintiff is a gay female and is 57 years of age.

98.     Plaintiff was subjected to disparate treatment as it relates to Defendant FERC's refusal to hire her.  In addition, Defendant FERC (through its agents, servants and/or employees) has made false statements about Plaintiff; has harassed her in the performance of her day-to-day job duties; and the Defendant has otherwise mistreated Plaintiff based on her age, gender and sexual orientation.

99.     Defendant FERC's illegal discrimination in violation of the DC Human Rights Act has caused Plaintiff to suffer irreparable loss and injury including, but not limited to, economic loss, humiliation, embarrassment, emotional distress (requiring therapy and treatment), physical harm and deprivation of her right to employment opportunities.  In addition, the Defendant FERC's discriminatory and retaliatory treatment of Plaintiff resulted in loss of pay, retirement benefits, job training, job progression and financial injury.

**COUNT XI**
**(Violation of the Pilot Program for Enhancement of**
**Contractor Protection from Reprisal of Certain Information)**

100.    Plaintiff incorporates paragraphs 1 through 99 by reference as if fully set forth herein.

101.    This cause of action arises under 41 USC § 265 and 42 USC § 4712 (The Pilot Program for Enhancement of Contractor Protection From Reprisal for Disclosure of Certain Information).  These statutes provide that an employee of a federal contractor who makes a protected disclosure of misconduct to certain enumerated persons is protected from reprisal and retaliation.

102.    That at all times relevant hereto, Ms. Tobin has worked for a federal security contractor (SECTEK) that is subject to this law.

103.     That in the instant case, Ms. Tobin has made protected disclosures about misconduct.  These disclosures concerned the misconduct of Mr. Henby, Mr. McAteer and others, including, *inter alia*: the pay to play scheme, playing golf on government time, utilizing government employees and funds to run a private business, and concerns over the protection of FERC classified information security practices.  These protected disclosures occurred in March 2015 (during the court of the EEO Complaint investigation) and as recently as June 2015 (in counsel's complaint to the Department of Energy Office of Inspector General).

104.     That Plaintiff has been subjected to reprisal and retaliation as a direct and proximate result of these disclosures, including (a) false statements made that she caused a leack of information; (b) micro-managing and bird-dogging her; (c) refusing to allow Plaintiff to be released from FERC to another contract; and (d) she was otherwise damaged.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, PAMELA TOBIN, requests that this Court enter judgment in her favor and award her the following relief:

A. Declare that the actions of Defendants  constitute discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, the Uniformed Services Employment and Re-employment Act, the Veterans Employment Opportunities Act; the Privacy Act, United States Constitution, the DC Human Rights Act and the Pilot Program for Enhancement of Contractor Protection.

B. Order Defendant to cease and desist from all future discrimination and retaliation against Plaintiff;

C.  Award Plaintiff economic and non-economic damages in an amount to be
    determined at trial,  for his loss and injury including, but not limited to, economic
    loss, embarrassment, humiliation, emotional pain and suffering, physical injuries,
    inconvenience, and other non-pecuniary losses and deprivation of his right to
    equal employment opportunities, in an amount to be determined, but in no event
    less than $400,000.00 and/or the maximum permitted by law for each violation;

D.  Award Plaintiff all lost salary and benefits that she would have received had
    Defendant not engaged in unlawful discrimination and retaliation, including
    appropriate back pay, benefits and front pay;

E.  Order the Defendant to give a positive recommendation when contacted by
    prospective employers of Plaintiff;

F.  Order the Defendant to give positive and appropriate preferential consideration
    for any employment positions she may apply for;

G.  Award Plaintiff prejudgment interest;

H.  Grant Plaintiff declaratory relief as well as injunctive relief to correct and/or
    remove any false and/or negative information in her personnel records;

I.  Award Plaintiff  reasonable attorney's fees and costs incurred in this action and
    the administrative claim that preceded it;

J.  Award such other relief as the Court deems appropriate and just.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedures, Plaintiff requests a trial
by jury as to all issues in this case.

Respectfully Submitted,


___/s/___Richard J. Link____
Richard J. Link, #443609

___/s/___David P. Weber_____
David P. Weber, #468260
Counsel for Plaintiff
GOODWIN WEBER PLLC
267 Kentlands Boulevard, Suite 250
Gaithersburg, MD 20878
(301) 850-7600 x 103
(301) 850-3374 Fax
Richard.Link@goodwinweberlaw.com
David.weber@goodwinweberlaw.com



Dated: July 21, 2015